BECKWITH et al. v. POWERS.

(Court of Civil Appeals of Texas. El Paso. April 17, 1913. Rehearing Denied May 22, 1913.)

1. VENUE (§ 32*)—PLEA OF PRIVILEGE—SUFFICIENCY.

Rev. Civ. St. 1911, art. 1903, provides that a plea of privilege to be sued in the county of one's residence shall be sufficient if in writing and sworn to, and stating that the party claiming such privilege was not, at the institution of suit or the time of service or the filing of the plea, a resident of the county in which the suit was instituted, and that none of the exceptions to exclusive venue in the county of one's residence mentioned in article 1830 exist in said cause. *Held*, that a plea of privilege need not specifically negative all of the exceptions in article 1830, as that defendant was a married woman, transient person, etc.

[Ed. Note.—For other cases, see Venue, Cent. Dig. §§ 47–50; Dec. Dig. § 32.*]

2. VENUE (§ 32*) — PLEA OF PRIVILEGE — AMENDMENT.

A plea of privilege to be sued in the county of defendant's residence may be amended.

[Ed. Note.—For other cases, see Venue, Cent. Dig. §§ 47–50; Dec. Dig. § 32.*]

3. ABATEMENT AND REVIVAL (§ 84*)—ORDER OF PLEADING—PLEA OF PRIVILEGE—AMENDMENT.

The filing of an amended plea of privilege related back to the original plea, so that the fact that an answer to the merits was filed between the filing of the original and amended plea of privilege was immaterial.

[Ed. Note.—For other cases, see Abatement and Revival, Cent. Dig. §§ 155, 176, 507–510; Dec. Dig. § 84.*]

---

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key-No. Series & Rep'r Indexes

**4. APPEAL AND ERROR (§ 1043\*) — HARMLESS ERROR.**

Any error in striking a plea of privilege by one of the defendants to be sued in another county was harmless, where all the defendants were jointly liable and were sued jointly, and the jury found that the appealing defendant was liable.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4115–4121; Dec. Dig. § 1043.\*]

**5. FRAUD (§ 59\*)—DAMAGES—MEASURE.**

The measure of damages for fraud in the sale of personalty, such as corporate stock, by misrepresenting the value of the corporate properties, etc., is the difference between the value of the property received and the amount paid therefor, plus any sums legitimately expended as a result of the fraudulent representations.

[Ed. Note.—For other cases, see Fraud, Cent. Dig. §§ 60–62, 64; Dec. Dig. § 59.\*]

**6. FRAUD (§ 59\*)—MEASURE OF DAMAGES.**

Defendant stated to plaintiff that the actual value of the stock of a corporation, as represented by its available assets, after deducting all liabilities, was $10,000, which was par value, but it appeared that the corporate liabilities exceeded its assets, and plaintiff was compelled to pay its debts, amounting to several thousand dollars, in order to protect the assets. *Held*, that plaintiff's measure of damages was the difference between the amount paid for the stock and its value, plus such amounts as plaintiff was required to pay to discharge the corporate debts in order to protect the assets.

[Ed. Note.—For other cases, see Fraud, Cent. Dig. §§ 60–62, 64; Dec. Dig. § 59.\*]

**7. APPEAL AND ERROR (§ 1066\*)—HARMLESS ERROR—INSTRUCTIONS ON DAMAGES.**

Error in charging, in an action for damages for fraudulent representations as to the value of corporate stock purchased, that the jury should allow plaintiff the difference between the value of what $10,000 worth of stock would have been, if the statements as to its value had been true, and its actual value, was not harmless, though the evidence showed the value of the stock as represented to be $10,000, its par value, which was the amount paid, where the evidence also showed that the good will of the business had substantial value.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 4220; Dec. Dig. § 1066.\*]

**8. TRIAL (§ 240\*)—INSTRUCTIONS—REQUESTS— ARGUMENTATIVE INSTRUCTIONS.**

An argumentative charge requested was properly refused.

[Ed. Note.—For other cases, see Trial, Cent. Dig. § 561; Dec. Dig. § 240.\*]

**9. TRIAL (§ 260\*)—INSTRUCTIONS—REQUESTS— CHARGES ALREADY GIVEN.**

A requested charge, the substance of which, so far as proper, was contained in charges given, was properly refused.

[Ed. Note.—For other cases, see Trial, Cent. Dig. § 561; Dec. Dig. § 260.\*]

**10. APPEAL AND ERROR (§ 1173\*)—REVERSAL —REVERSAL IN PART.**

A reversal as to two of the defendants, jointly sued and jointly liable, would work a reversal as to all of the defendants and a vacation of the entire judgment against them.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4562–4572, 4656; Dec. Dig. § 1173.\*]

Appeal from District Court, El Paso County; A. M. Walthall, Judge.

Action by W. E. Powers against J. W. Beckwith and others. From a judgment for plaintiff, defendants appeal. Reversed and remanded.

McBroom & Scott and Jones & Jones, all of El Paso, and Fisher, Sears & Campbell, of Houston, for appellants. Patterson, Buckler & Woodson, of El Paso, for appellee.

HIGGINS, J. This was a suit by appellee against J. W. Beckwith, a resident of El Paso county, and J. E. Bishop and J. E. Ervine, residents of Harris county, brought in the county of the residence of the defendant Beckwith. Plaintiff in his petition averred that prior to and during April, 1910, the El Paso Grain Company was a corporation; that the three defendants owned all of the stock of said corporation and were the only directors thereof; that prior to the 20th day of April, 1910, the defendant Beckwith, acting for himself and as agent for the defendants Bishop and Ervine, had been negotiating with plaintiff for the sale to plaintiff of all the capital stock of said corporation; that defendant Beckwith was authorized by said Bishop and Ervine to act as their agent in selling said stock, and was held out by them as their agent for that purpose; that during the negotiations between said Beckwith and plaintiff the said Beckwith, acting for himself and as agent for Bishop and Ervine, furnished plaintiff a statement of the condition of the business affairs of said corporation, said statement having been furnished for the purpose of inducing the plaintiff to buy the stock in said corporation of said Beckwith, Bishop, and Ervine; that said Beckwith represented to plaintiff that said statement showed the true condition of the business affairs of said corporation; that said Beckwith also represented to the plaintiff that the books of said corporation showed the true condition of said corporation; that said statement purported to be a true statement taken from the books of said corporation; that plaintiff examined said statement so furnished him by said Beckwith and believed that said statement and the books of said corporation showed the true condition of said corporation; that, believing said representations of said Beckwith, he (plaintiff) during the month of April, 1910, agreed to buy the $10,000 capital stock of said corporation, and to pay par value thereof; that the plaintiff did, in fact, during the month of April, 1910, acting upon said statement and believing same to show the true financial condition of the said corporation, buys $10,000 of the capital stock of the said corporation, that being the stock of the said Beckwith, Bishop, and Ervine therein, and paid $10,000 therefor; that said stock was bought by plaintiff from said Beckwith, who was selling his own stock and also was selling the stock of said Bishop and Ervine as

their agent; that thereafter, and after the plaintiff had bought all of said stock from the said Beckwith, who had been acting for himself and as the agent for Bishop and Ervine, the said Bishop came to El Paso and agreed for himself and for Ervine to sell their part of said stock to plaintiff at the par value thereof, and that the said Bishop and Ervine thereby ratified and confirmed the sale so made by said Beckwith; that said statement so furnished to plaintiff was false, wrongful, and fraudulent, and known by all of said defendants to be so; that said statement was made and furnished to plaintiff for the purpose of inducing him to buy said stock at more than its value and had that effect; that plaintiff believed said statement of the condition of said corporation to be true, and buying said stock acted upon that belief; that he would not have bought said stock had be known the true condition of said corporation; that said statement was not true but was false, and that in fact said corporation had less assets than said statement showed and more liabilities than said statement showed; that in truth said corporation was worthless, and that said corporate stock was actually worthless.

On September 2, 1911, Bishop and Ervine filed a plea to the jurisdiction of the court over their persons and claimed their privilege of being sued in Harris county, and thereafter, on September 4, 1911, they filed their original answer, consisting of exceptions and a general denial, stating in same that they did not waive their said plea of privilege but insisted upon the same and answered subject thereto. On February 12, 1912, said defendants Bishop and Ervine, by leave of court, filed their first amended plea to the jurisdiction of said court over their persons in lieu of their original plea filed September 2, 1911. On February 15, 1912, the court sustained certain exceptions to the amended plea of privilege and held that the same was not filed in due order of pleading and struck out the plea and held same for naught. It seems to be contended that the amended plea of privilege was insufficient because it did not deny that Beckwith was a proper defendant, and did not allege a fraudulent joinder for the purpose of conferring jurisdiction upon the district court of El Paso county over the persons of Bishop and Ervine.

[1] The amended plea of privilege is quite lengthy and undertakes to specifically negative all of the exceptions contained in article 1830 of the Revised Statutes of 1911 to the general rule requiring parties to be sued in the county of their domicile. These allegations were all quite unnecessary in view of article 1903 with relation to the sufficiency of such a plea. The amended plea contains a general allegation in compliance with the provisions of the article last cited, and the plea was therefore sufficient, and the court erred in sustaining the exceptions thereto. The court likewise erred in holding that the same was not filed in due order of pleading, and that the plea of privilege was therefore waived.

[2] The original plea of privilege was filed in due order, and we know of no reason why the same should not be held to be amendable, and it has been so held. Railway Co. v. Barnett, 57 S. W. 600; Lindheim v. Davis, 2 Willson, Civ. Cas. Ct. App. § 108.

[3] The filing of the amended plea related back to and superseded the original plea and was therefore filed in due order of pleading. The fact that an answer to the merits had been filed between the date of filing the original plea and the amended plea does not affect the question, since the answer to the merits was filed subject to the plea of privilege, and, as we have seen, the amended plea related back and superseded the original plea as of the date the latter was filed.

[4] The error, however, is not reversible, since Beckwith was sued jointly with Bishop and Ervine; and if Beckwith represented Bishop and Ervine in the sale of their stock as their agent and made the false and fraudulent representations in their behalf, as alleged, then there was a joint liability upon the part of all of the defendants, and upon the trial of this issue before a jury it was resolved against appellant. No harm could therefore have resulted from the court's action in striking out the plea of privilege.

Upon trial the court charged the jury that, if they found for the plaintiff, they would allow him the difference between the value of what the $10,000 worth of stock sold would have been if the statement made of its value had been true, and the value of the stock as it actually was.

[5] Whatever may be the rule in other jurisdictions, and regardless of certain decisions of the Courts of Civil Appeals referred to in appellee's brief, it is now well settled in this state by numerous authorities that the measure of damage for fraudulent representations in such cases is the difference between the value of the property received and the amount paid therefor, plus any other outlay legitimately attributable to or resulting from the fraudulent representations. George v. Hesse, 100 Tex. 44, 93 S. W. 107, 8 L. R. A. (N. S.) 804, 123 Am. St. Rep. 772, 15 Ann. Cas. 456; Pickens v. Major, 139 S. W. 1040; Gordon v. Rhodes, 117 S. W. 1023; Wimple v. Patterson, 117 S. W. 1034; Connally v. Saunders, 142 S. W. 975; Day v. Steverson, 145 S. W. 1062; Tompkins v. Perry, 128 S. W. 1164; Simmons v. Clark, 130 S. W. 619; Williams v. Detroit, etc., 114 S. W. 169; Tompkins v. Perry, 128 S. W. 1164; Peek v. Derry, 37 Chan. Div. 541. The rule, as we have stated it, is clearly stated and recognized by the authorities quoted above, and it is not for this court to question its correctness or to evade

its provisions by refined distinctions, and we therefore hold it applicable in this case.

It appears from the evidence that, according to a statement rendered to appellee by the defendant Beckwith, acting for himself and for his codefendants, the actual and intrinsic value of the stock of the El Paso Grain Company, as represented by its available assets, after deducting all liabilities, was $10,000, which was the par value of such stock. As a matter of fact, however, it developed that the liabilities of the corporation exceeded its assets, and that, in order to protect the assets of the company, appellee was required to pay debts of the company amounting to several thousand dollars.

It is contended by appellants that under the authority of George v. Hesse, supra, the correct measure of damage is the difference between what Powers paid for the stock and its value. A literal application of the rule contended for by appellants would preclude a recovery of the amounts which appellee had been obliged to pay out to creditors of the company to protect its assets. The authority relied upon sustains no such narrow and restricted view of the correct measure of damages.

[6] The primary and fundamental principle recognized in the case cited is that the defrauding party was bound to make good the loss actually sustained, which would include moneys paid out and any other outlay legitimately attributable to the fraudulent conduct. Applying this principle to the case at bar, the correct measure of damage is the difference between the amount paid by appellee to appellants for the stock and the value of the stock, plus such amounts as appellee may have been required to pay out in settlement of debts of the corporation in order to protect its assets. Any other rule of damage would not compensate appellee for the loss actually sustained.

[7] It is contended by appellee that, while the measure of damage given by the court in this case may be incorrect, yet, as applied to the facts in this case, the error was abstract and has no practical importance. It is argued that inasmuch as the evidence shows the value of the stock as represented by the statement to be $10,000, which was its par value, and inasmuch as the amount paid by appellee was $10,000, plus the amounts paid out by him, therefore the jury necessarily took into consideration the same relative amounts in determining the amount of the appellee's damage. This contention, however, is based upon the premise that the stock in fact was of no value and, by reason of the debts of the company, was in fact worth less than nothing, and this assumption as to the value of the stock is based upon the further premise that the only items to be considered in determining the value of the stock were the assets and liabilities shown in the statement rendered to appellee, upon

the faith of which he purchased. This premise, however, is false, because it appears from the evidence that the El Paso Grain Company had an established business of considerable magnitude and a line of customers, all of which, while intangible in its nature, yet had some actual and intrinsic value, which should be taken into consideration in determining the value of the stock. The point is properly raised that there was no evidence before the jury by which they could properly determine the value of the stock which appellee received, and we must therefore overrule the appellee's contention that the error in the charge was abstract in its nature, presenting merely an academic question.

[8, 9] Special charge No. 5, the refusal of which is complained of under the ninth assignment, was properly refused because it was argumentative in its nature, and, in so far as proper, its substance was contained in charges given by the court.

Special charge No. 6 was also properly refused. In its requested form it was calculated to divert the minds of the jury from the controlling issue upon which the liability of Bishop and Ervine rested; i. e., the agency relation to them of Beckwith, or of their ratification of his fraudulent action inducing appellee to purchase the stock. For the reasons indicated, we are of the opinion the special charges noted were properly refused.

[10] Appellee suggests that, inasmuch as the appellant Beckwith has filed no brief in the cause, the judgment should therefore be affirmed as to him. There can be but one final judgment in a case, and a reversal as to Bishop and Ervine carries with it a reversal and vacation of the entire judgment rendered by the lower court. Danner v. Walker-Smith Co., 154 S. W. 295, and cases there cited.

For the error indicated, the cause is reversed and remanded.

McKENZIE, J., did not sit in this case.